# EXHIBIT D

Copy

IN THE CIRCUIT COURT FOR DAVIDSON COUNTY TENNESSEE
AT NASHVILLE

2016 SEP -7 AM 9:42

RICHARD R. ROOKER, CLERK
D.C.

| | | |
|---|---|---|
| **DEANA HART AND CHRISTOPHER HART, by and on behalf of their minor child, [redacted]** | ) | |
| *Plaintiffs,* | ) | **Docket No. 16C-1954** |
| vs. | ) | **JURY DEMANDED** |
| **FISHER-PRICE, INC.** | ) | |
| *Defendant.* | ) | |

## PLAINTIFFS' FIRST AMENDED COMPLAINT

Comes now Plaintiffs, Deana Hart and Christopher Hart, by and on behalf of their minor child, [redacted], by and through undersigned counsel, and pursuant to Rule 15 of the Tennessee Rules of Civil Procedure for his cause of action against the Defendant, Sean Simon, respectfully state to the Court as follows:

**Parties & Venue**

1. At all relevant times Plaintiffs Christopher ("Chris") Hart and wife Deana hart (hereinafter "the Harts" or "Plaintiffs" as specified) were residents of Nashville, Davidson County, Tennessee. Since the subject injuries as set forth herein to [redacted] the family moved from Tennessee to Wake Forest, North Carolina and can be served through undersigned counsel.

2. [redacted] is the minor child of Deana and Chris Hart born on [redacted], 2012.

Case 3:17-cv-00008 Document 1-4 Filed 01/05/17 Page 2 of 15 PageID #: 39

Copy

3. Defendant Fisher-Price, Inc. (hereinafter "Fisher-Price") is a for-profit Delaware corporation licensed to transact business in the State of Tennessee and wholly owned subsidiary of Mattel, Inc having a principal office located at 636 Girard Avenue, East Aurora, New York 14052-1824. It may be served through is attorney, Clarence Risin with Baker Donelson, Bearman, Caldwell & Berkowitz, P.C. at 211 Commerce Street, Suite 800, Nashville, Tennessee 37201. Fisher-Price is a designer, manufacturer, distributer and seller of products designed for use by children and infants. At all relevant times, Fisher-Price transacted, solicited, and conducted business in the State of Tennessee and derived substantial revenue from such business.

4. This Court has personal jurisdiction over Fisher-Price and the subject matter of this lawsuit, which involves common law and statutory claims, because the causes of action asserted herein arose from Fisher-Price's contacts with this state, because, at all relevant times, they designed, manufactured, labeled, sold distributed, promoted and placed into the stream of commerce in Tennessee and the United States numerous products including the one that caused serious and permanent injuries to [redacted].

5. Venue is proper before the Circuit Court of Davidson County, Tennessee because the injuries to [redacted] occurred in Davidson County.

**Facts**

6. [redacted] was born on [redacted] 2012. At birth [redacted] was healthy and did not suffer from any musculoskeletal deformities of his skull, face, and/or jaw.

Copy

7. After T█ was born the Harts acquired a device manufactured and sold by Fisher-Price called a "Rock 'n Play Sleeper." (hereinafter "Sleeper")

8. Fisher-Price designed, manufactured, labeled, distributed, marketed and sold the Sleeper to parents of newborn infants as a safe and portable sleeping solution to "rock, play, and sleep the day away." As the name suggests, the device also had a rounded metal frame bottom that allowed the device to "rock" back and forth.

9. The Sleeper is a device with two rounded legs that support a hammock/sling, made from a blended fabric material, for the child to be placed inside. The hammock/sling contains a hard plastic backing insert. The Sleeper contains very little padding or cushion between the child and the plastic backing insert.

10. Plaintiffs would place T█ H█ in the Sleeper on his back as designed both when he was resting and awake. At all times Plaintiffs used the Sleeper at all times in a reasonable and prudent manner.

11. T█ H█s pediatrician is Dr. Jennifer E. Moore, a Board Certified Pediatrician and fellow in the American Academy of Pediatrics. At the time she treated T█ H█ in 2012 Dr. Moore had more than 20 years of experience.

12. In early November 2012 Dr. Moore diagnosed T█ H█ as suffering from extremely severe plagiocephaly, especially along the back of his head. Dr. Moore identified that T█ H█'s skull, face and jaw were all distorted as a result of positional plagiocephaly.

Copy

13. Plagiocephaly is a condition characterized by an asymmetrical distortion, or flattening of, the human skull. This asymmetrical flattening also causes asymmetry across the head shape including the face. Infants like T█ H█ are especially susceptible to developing plagiocephaly as their skulls are not fully developed in the first year after birth. Plagiocephaly is a dangerous condition that can lead to a number complications and risk factors including cognitive deficits and developmental delays in children.

14. Dr. Moore opined that the direct cause of T█ H█'s extreme plagiocephaly was due to his use of the Sleeper.

15. Dr. Moore identified that the Sleeper was a defective in design and function.

16. The Sleeper is defective in design as it does not allow the infant child to roll or turn while lying in the Sleeper. This forced position of the child prevents the child from distributing pressure and weight from the back of skull while lying in the Sleeper.

17. The Sleeper is defective in design as it contains a hard, flat plastic backing that's inserted underneath the child with inadequate cushioning/padding, especially under the infant's head. The hard backing does not adequately absorb or distribute the weight across its flat surface placing great pressure on the back of the infant's skull.

18. T█ H█'s extreme plagiocephaly was caused by the defective design of the Sleeper.




Copy

19. To treat the plagiocephaly, Dr. Moore referred [redacted] to an Orthodist who fashioned a corrective helmet for him to wear. The corrective helmet constricts the infants head with the goal of curing the deformity and asymmetry. The corrective helmets are extremely painful and uncomfortable for the infant child undergoing therapy. The helmets must be regularly adjusted to continue applying proper constriction and pressure on the infant's head.

20. [redacted]s condition was so advanced that he was required to wear a constrictive helmet for twenty-three hours a day for more than six months.

21. While some of the deformity and asymmetry was treated through the corrective helmets, [redacted]s condition was never fully resolved and some asymmetry to his skull is permanent.

**Count I - Strict Liability of Fisher-Price**

22. Plaintiffs herein incorporate by reference Paragraphs 1-21 as if reasserted and specifically plead herein.

23. Fisher-Price at all times material hereto engaged in the business of designing, manufacturing, assembling, labeling, selling, marketing, and/or supplying the Sleeper.

24. The Sleeper was in a defective condition at the time that it was designed, manufactured, sold, and/or marketed by Fisher-Price and at the time it left Fisher-Price's possession.

25. The Sleeper reached [redacted] without any substantial change in its condition and the Sleeper was in the possession of Fisher-Price at the time the defect occurred.

Copy

26. The condition of the Sleeper made it unreasonably dangerous for its intended use. Plaintiffs were a user of the Sleeper and were unaware of the defect and used the Sleeper in a reasonable, foreseeable, and intended manner. The injury suffered by T█ H██ is a disfiguring injury caused by the defective Sleeper.

27. The Sleeper failed to perform as safely as an ordinary consumer, such as Plaintiffs, would expect when used in an intended or reasonably foreseeable manner. Any benefits from the design of the Sleeper do not outweigh the risk of danger inherent in such a design. Fisher-Price knew or should have known that the ultimate users of the Sleeper would not, and could not, inspect the Sleeper so as to discover the latent defects described herein, and failed to give appropriate and adequate warnings of the same. Moreover, Fisher-Price could have provided a safer alternative design to the Sleeper that would allow the infant to move his/her head and provide additional padding or adequate support that would prevent the weight of the infant's head to rest on the hard flat surface. Such safer alternative designs, individually or collectively, existed at the time the Sleeper was manufactured, and it would not have substantially impaired the Sleeper's utility.

28. Such safer alternative designs were economically and technologically feasible at the time the Sleeper left the control of Fisher-Price by the application of existing or reasonably achievable scientific knowledge.

29. The Sleeper's defective design was the direct and/or proximate cause of Plaintiffs' injuries and damages.

30. The Sleeper was also not accompanied by adequate instructions and/or warnings to fully apprise consumers, including Plaintiffs, of the full nature




and extent of the risks to infants associated with its use, thereby rendering Fisher-Price liable to Plaintiffs.

31. Fisher-Price provided no warnings, or, in the alternative, the warnings given by Fisher-Price were not accurate, clear, and/or were ambiguous and/or conspicuous. Any warnings that were given by Fisher-Price failed to adequately warn of the dangers of using the Sleeper.

32. Fisher-Price had a continuing duty to warn Plaintiffs of the dangers associated with the Sleeper.

33. Fisher-Price, as manufacturer, distributor, and seller of the Sleeper did not uphold reasonably prudent standards of reasonable safeness and warning.

34. Had Plaintiffs received adequate warnings regarding the risks to their infant while using the Sleeper, Plaintiffs would not have used the Sleeper as they did.

35. As alleged herein, as a direct and proximate result of Fisher-Price's acts and omissions, and the defective characteristics of the Sleeper, Plaintiffs have incurred past and future medical costs, past and future physical pain and suffering, past and future mental and emotional pain and suffering, disability, lost capacity for the enjoyment of life, and disfigurement.

36. Plaintiffs seek actual and punitive damages from Fisher-Price as alleged herein.

**<u>Count II - Negligence</u>**

37. Plaintiffs herein incorporate by reference Paragraphs 1-36 as if reasserted and specifically plead herein.



Case 3:17-cv-00008 Document 1-4 Filed 01/05/17 Page 8 of 15 PageID #: 45

Copy

38. Fisher-Price had a duty to exercise reasonable care in the design, manufacture, marketing, testing, approval, application for approval, inspection, labeling, sale and distribution of the Sleeper into the stream of commerce.

39. Fisher-Price failed to exercise ordinary care in the design, manufacture, marketing, testing, inspection, labeling, sale and/or distribution of the Sleeper into interstate commerce and thus Fisher-Price was negligent in all these areas.

40. As a direct and proximate result of the negligence of Fisher-Price, the Sleeper was unreasonably dangerous for its ordinary and foreseeable use at the time it left the possession of Fisher-Price.

41. Plaintiffs' injuries and damages alleged herein were and are the direct and proximate result of the negligence of Fisher-Price as follows:

a. In its design, development, research, manufacture, testing, packaging, labeling, promotion, marketing, guarding, sale and/or distribution of the Sleeper;

b. In its design of the Sleeper whereby Fisher-Price failed to adequately guard infants against plagiocephaly and disfigurement;

c. In its failure to warn or instruct, and/or adequately warn or adequately instruct, users of the Sleeper, including Plaintiffs, of the Sleeper's dangerous and defective characteristics;

d. In its promotion of the Sleeper as a safe device for infants to rest and sleep inside, despite evidence as to the Sleeper's defective and dangerous characteristics due to its propensity to cause serious injury;

e. In representing that the Sleeper was safe for its intended use when, in fact, the product was unsafe for its intended use;

f. In failing to perform appropriate pre-market testing of the Sleeper;

g. In failing to perform appropriate post-market testing of the Sleeper;

Copy

h. In failing to perform appropriate post-market sureillance of the Sleeper.

42. Fisher-Price know or should have known that users like the Plaintiffs would foreseeably suffer injury as a result of its failure to exercise reasonable and ordinary care.

43. As alleged herein, as a direct and proximate result of Fisher-Price's acts and omissions, and the defective characteristics of the Sleeper, Plaintiffs have incurred past and future medical costs, past and future physical pain and suffering, past and future mental and emotional pain and suffering, disability, lost capacity for the enjoyment of life, and disfigurement.

44. Plaintiffs seek actual and punitive damages from Fisher-Price as alleged herein.

**Count III – Breach of Implied Warranties**

45. Plaintiffs herein incorporate by reference Paragraphs 1-44 as if reasserted and specifically plead herein.

46. Fisher-Price designed, manufactured, marketed, distributed, supplied, and/or sold the Sleeper.

47. At the time that Fisher-Price manufactured, marketed, distributed, supplied, and/or sold the Sleeper they knew of the use for which the Sleeper was intended and impliedly warranted it to be of merchantable quality and safe and fit for such use.

48. At the time Fisher-Price made implied warranties it knew of or should have known of the concerns about the reasonably safe use of the Sleeper, but Fisher-Price did not recall or remove the defective product from the stream of commerce, or



take the opportunity to cure the defects to make the Sleeper of merchantable quality, safe or fit for its intended uses and purposes.

49. Plaintiffs reasonably relied upon the skill, expertise, superior knowledge, and judgment of Fisher-Price.

50. Plaintiffs used the Sleeper for its intended purpose.

51. Due to Fisher-Price's breach of implied warranties and negligence as alleged herein, Plaintiffs could not have known about the nature of the risks associated with the Sleeper until after Plaintiffs had used it and suffered harm.

52. Contrary to the implied warranty, the Sleeper was not of merchantable quality and was not safe or fit for its intended uses and purposes as set forth herein.

53. As alleged herein, as a direct and proximate result of Fisher-Price's acts and omissions, and the defective characteristics of the Sleeper, Plaintiffs have incurred past and future medical costs, past and future physical pain and suffering, past and future mental and emotional pain and suffering, disability, lost capacity for the enjoyment of life, and disfigurement.

54. Plaintiffs seek actual and punitive damages from Fisher-Price as alleged herein.

**Count IV – Breach of Express Warranties**

55. Plaintiffs herein incorporate by reference Paragraphs 1-54 as if reasserted and specifically plead herein.

56. Fisher-Price expressly warranted that the Sleeper was safe and fit for use by consumers and users, including Plaintiffs, for its intended purpose, that it was of merchantable quality, and that it was adequately tested and fit for its intended use.

Copy

57. At the time of making the express warranties Fisher-Price knew or should have known of the purposes for which the Sleeper was to be used and warranted the same to be, in all respects, fit, safe, effective, and proper for such purpose.

58. At the time of making the express warranties, Defendants knew of should have known that, in fact, said representations and warranties were false, misleading, and untrue in that the Sleeper was not safe and fit for its intended use and, in fact, could produce serious injuries and disfigurement in infants.

59. Plaintiffs relied on Fisher-Price's express warranties.

60. Fisher-Price breached said express warranties in that the Sleeper was not safe and fit for its intended use and, in fact, causes serious physical and disfiguring injuries because of its defective design, inadequate warnings, and its failure to make necessary changes/improvements to the product, or, in the alternative, recall the defective products from the stream of commerce to avoid injuries to users like the Plaintiffs.

61. As alleged herein, as a direct and proximate result of Fisher-Price's acts and omissions, and the defective characteristics of the Sleeper, Plaintiffs have incurred past and future medical costs, past and future physical pain and suffering, past and future mental and emotional pain and suffering, disability, lost capacity for the enjoyment of life, and disfigurement.

62. Plaintiffs seek actual and punitive damages from Fisher-Price as alleged herein.





**Count V - Punitive Damages**

63. Plaintiffs herein incorporate by reference Paragraphs 1-62 as if reasserted and specifically plead herein.

64. The wrongs done by Fisher-Price were aggravated by the reckless disregard for the rights of others, the public, and Plaintiffs for which the law would allow, and which Plaintiffs will seek at the appropriate time under Tennessee or governing law for imposition of punitive damages, in that Fisher-Price's conduct in designing, manufacturing, and selling the Sleeper was (a) specifically intended to cause substantial injury to Plaintiffs when viewed objectively from Fisher-Price's standpoint at the time of the conduct; (b) involved an extreme degree of risk considering the probability and magnitude of the potential harm to infant users of the Sleeper and that Fisher-Price was actually and/or subjectively aware of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others; (c) made material representations that were false, with Fisher-Price knowing that it was false or with reckless disregard as to its truth and as a positive assertion, with the intent that the representation was acted on by the Plaintiffs; and (d) continued to manufacture, market, and sell the Sleeper with reckless disregard for the substantial and serious risks posed to infant users of the device.

65. Plaintiffs relied on Fisher-Price's representations and Plaintiffs suffered injuries as a direct and proximate result of this reliance.

66. Plaintiffs therefore will seek to assert claims for punitive damages at the appropriate time as provided by Tennessee or governing law. Plaintiffs also allege



that the acts and omissions of Fisher-Price, whether taken singularly or in combination with others, constitute reckless disregard from which malice can be inferred that proximately caused the injuries to T█H█ and Plaintiffs. Plaintiffs seek exemplary damages in an amount that would punish Fisher-Price for its conduct and which would deter it or other similar manufacturers from engaging in such misconduct in the future.

**PREMISES SEEN AND CONSIDERED, PLAINTIFF PRAYS:**

a. For process to be issued and served upon Fisher-Price, requiring it to answer the allegations hereof;

b. For a actual, compensatory, and punitive judgment in favor of Plaintiffs against Fisher-Price in an amount to be determined by the trier of fact in an amount of at least One Million Dollars ($1,000,000.00).

c. For a compensatory judgment in favor of Plaintiffs Deana and Christopher Hart for past and future mental pain and anguish, and for filial consortium in an amount to be determined by the trier of fact of at least Five Hundred Thousand and 00/100 Dollars ($500,000.00).

d. For all costs to be taxed to Fisher-Price, including prejudgment interest and discretionary costs;

e. For a jury of twelve (12) to be empanelled to hear this matter;

f. For such other further general relief to which Plaintiffs may be entitled.



Case 3:17-cv-00008 Document 1-4 Filed 01/05/17 Page 14 of 15 PageID #: 51



RESPECTFULLY SUBMITTED:

BY: ______________________

**David M. Rich, BPR #23851**
Honeycutt, Doyle & Rich, PLLC
*Attorneys for Plaintiffs*
20 Music Circle East
Nashville, Tennessee 37203
Ph: (615) 244-0749
Fax: (615) 523-1761
dave.rich@hdlawoffice.com

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the forgoing instrument has been served on the following, via U. S. Mail, postage prepaid, facsimile, or via confirmed email by attachment, on this 6th day of September, 2016:

**Mr. Clarence Risin, BPR #16874**
**Ms. Sarah D. Murray, BPR #33454**
Baker, Donelson, Bearman, Caldwell and Berkowitz, P.C.
*Attorneys for Fisher-Price, Inc.*
211 Commerce Street, Suite 800
Nashville, Tennessee 37201
Ph: (615) 726-7319
Fax: (615) 744-5686
crisin@bakerdonelson.com
smurray@bakerdonelson.com

______________________
**David M. Rich, Esq.**